IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MOHAMED MAGASSOUBA, | * | |
| Plaintiff, | * | |
| v. | * | Civil No. 8:23-cv-00767-TJS |
| PRINCE GEORGE'S COUNTY, MARYLAND, *et al.*, | * | |
| | * | |
| Defendants. | | |

\* \* \* \* \* \* \* \* \*

**MEMORANDUM AND ORDER**

Pending before the Court is Defendant Prince George's County, Maryland's "Motion for Judgment, Renewed Motion for Judgment or, in the Alternative, Motion for New Trial as to Count IV" ("Motion"). ECF No. 93. Having considered the parties' submissions (ECF Nos. 93, 95, 97 & 103), I find that a hearing is unnecessary. *See* Loc. R. 105.6. For the following reasons, the Motion will be denied.

**I.     Introduction**

Plaintiff Mohamed Magassouba was formerly employed as a Prince George's County police officer. He brought this action against Prince George's County, and several individual supervisory officers (Angela Lane Porter, Jeffrey Walden, Sunny Mrotek, Robbie Loveday, and Shawne Waddy) for race discrimination, hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964; the Maryland Fair Employment Practices Act; 42 U.S.C. §§ 1981 and 1983; and the Maryland Declaration of Rights. Plaintiff alleged that Defendants discriminated against him because of his race and national origin, and that they retaliated against him after he engaged in protected activity, which ultimately resulted in his termination. The Court

granted Defendants' motion for summary judgment as to some claims but denied it as to others. ECF Nos. 40, 41 & 57.

The case proceeded to a seven-day jury trial. The jury returned a verdict in favor of Defendants on Plaintiff's race discrimination and hostile work environment claims against Prince George's County and for the individual defendants on the §§ 1981 and 1983 claims. The jury found in favor of Plaintiff and against Prince George's County on Plaintiff's Title VII retaliatory hostile work environment claim (Count IV). Prince George's County now moves for judgment notwithstanding the verdict or, in the alternative, a new trial.

## II.    Legal Standards

### A.    Rule 50(b)

"Judgment as a matter of law 'is properly granted if the nonmoving party failed to make a showing on an essential element of his case with respect to which he had the burden of proof.'" *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 391 (4th Cir. 2014) (quoting *Wheatley v. Wicomico Cnty.*, 390 F.3d 328, 332 (4th Cir. 2004)); *Brooks v. McKimmie*, No. DLB-23-208, 2026 WL 1172847, at *3 (D. Md. Apr. 30, 2026). When considering a Rule 50 motion, the Court "construe[s] the evidence in the light most favorable to the party against whom the motion was made and ask[s] whether 'there is substantial evidence in the record to support the jury's findings.'" *Anderson v. Russell*, 247 F.3d 125, 129 (4th Cir. 2001) (quoting *Wilhelm v. Blue Bell, Inc.*, 773 F.2d 1429, 1433 (4th Cir. 1985)). The Court must "disregard all evidence favorable to [Defendant] that the jury [was] not required to believe." *Harris v. Wormuth*, 669 F. Supp. 3d 477, 500 (D. Md. 2023) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000)). The Court "may not substitute [its] judgment for that of the jury or make credibility determinations[.]" *Price v. City of Charlotte*, 93 F.3d 1241, 1249 (4th Cir. 1996). Further, "[i]f the

2

evidence as a whole is susceptible of more than one reasonable inference, a jury issue is created and a motion for judgment as a matter of law should be denied." *Myrick v. Prime Ins. Syndicate, Inc.*, 395 F.3d 485, 489-90 (4th Cir. 2005).

      **B.**      **Rule 59(a)**

Rule 59(a)(1)(A) provides that either party may petition the Court for a new trial "on all or some of the issues" after a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." *Finley Alexander Wealth Mgmt., LLC v. M&O Mktg., Inc.*, No. SAG-19-1312, 2025 WL 1592464, at *4 (D. Md. June 5, 2025). This is an "extraordinary remedy which should be used sparingly." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). On a Rule 59(a) motion, the Court must "set aside the verdict and grant a new trial if (1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Knussman v. Maryland*, 272 F.3d 625, 639 (4th Cir. 2001) (internal quotation marks and alterations omitted). The first two prongs require a "comparison of the factual record and the verdict to determine their compatibility." *Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc.*, 99 F.3d 587, 594 (4th Cir. 1996). In this analysis, the Court's review of the jury's factual determinations is limited to "whether the jury's verdict is against the weight of the evidence or based on evidence which is false." *Id.* "Ultimately, the decision of whether to grant a new trial 'rests within the sound discretion of the trial court but such discretion must not be arbitrarily exercised.'" *Finley*, 2025 WL 1592464, at *4 (quoting *City of Richmond v. Atl. Co.*, 273 F.2d 902, 916 (4th Cir. 1960)).

## C.    Retaliatory Hostile Work Environment

Title VII makes it unlawful for employers to "discriminate against" employees because they have opposed discrimination or participated in an investigation, proceeding, or hearing under Title VII. 42 U.S.C. § 2000e-3(a). The purpose of the anti-retaliation provision is to "protect employees who complain about real or perceived discrimination in the workplace from retaliation, which threatens to chill the willingness of employees to speak up." *Laurent-Workman v. Wormuth*, 54 F.4th 201, 212 (4th Cir. 2022).

To establish a claim for retaliation, a plaintiff must show that he engaged in a protected activity, that his employer took adverse action against him, and that, but for the protected activity, the employer would not have taken the adverse action. *Id.* In *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006), the Supreme Court held that the phrase "discriminate against" means something different for a retaliation claim than it does for a substantive discrimination claim. *See Laurent-Workman*, 54 F.4th at 213. For a plaintiff to show that he was "discriminated against" in the context of a retaliation claim, he must show "that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (internal quotation marks omitted).

One form of prohibited retaliation is the imposition of a retaliatory hostile work environment. To prevail on such a claim, a plaintiff must establish that the retaliatory conduct "(1) was unwelcome, (2) was sufficiently severe or pervasive that it would dissuade a reasonable worker from making or supporting a charge of discrimination, and (3) can be attributed to the employer." *Laurent-Workman*, 54 F.4th at 218. Critically, in a retaliatory hostile work environment claim, the "severe or pervasive" conduct need not "alter the conditions of

employment and create an abusive atmosphere" (as is required for a discriminatory hostile work environment claim). *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 207-08 (4th Cir. 2019). Rather, the requirement of conduct "sufficiently severe or pervasive that it would dissuade a reasonable worker from making or supporting a charge of discrimination" may be satisfied by conduct such as "a series of unpredictable management decisions," "acts of sabotage," "erroneous reprimands," "bogus denials of professional training opportunities," and "alteration of work product in a manner damaging to" the plaintiff. *Laurent-Workman*, 54 F.4th at 218.

### D.    Title VII's Opposition Clause

Title VII's Opposition Clause prohibits retaliation against an employee who has "opposed any practice made an unlawful employment practice" by Title VII. 42 U.S.C. § 2000e-3(a). To "oppose" a practice in this context means for an employee "to resist or antagonize . . . ; to contend against; to confront; resist; withstand, . . . to be hostile or adverse to, as in opinion." *DeMasters v. Carilion Clinic*, 796 F.3d 409, 416 (4th Cir. 2015) (quoting *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009)). "[T]he threshold for oppositional conduct is not onerous." *DeMasters*, 796 F.3d at 417. When an employee communicates to his employer a belief that the employer has engaged in employment discrimination, "that communication virtually always constitutes the employee's opposition to the activity." *Crawford*, 555 U.S. at 276. The Fourth Circuit "has articulated an expansive view of what constitutes oppositional conduct, recognizing that it 'encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities.'" *DeMasters*, 796 F.3d at 417 (collecting cases) (quoting *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998)).

Likewise, what constitutes an "unlawful employment practice" is broadly interpreted by the Fourth Circuit. *DeMasters*, 796 F.3d at 417 (citing *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 282 (4th Cir. 2015)). For purposes of evaluating protected activity under Title VII, an "unlawful employment practice" includes not just a practice that is actually unlawful under Title VII but also a practice that the employee "reasonably believes to be unlawful." *Id.* (citation and internal quotation marks omitted).

When the Court is tasked with interpreting whether an employee engaged in activity protected by Title VII's Opposition Clause, it does not engage in "a myopic analysis under which an employee's opposition must be evaluated as a series of discrete acts." *Id.* On the contrary, the Court considers "the totality of the circumstances, as [a] play cannot be understood on the basis of some of its scenes but only on its entire performance, and similarly, a discrimination analysis must concentrate not on individual incidents, but on the overall scenario." *Id.* (citation omitted). The Court views a plaintiff's conduct "through a panoramic lens, viewing the individual scenes in their broader context and judging the picture as a whole." *Id.* at 418. While individual acts are "scrutinized to ascertain their nature, purpose, and nexus to the alleged objective," the essential question is whether the employee's course of conduct as a whole (1) communicates to the employer a belief that the employer has engaged in a form of employment discrimination and (2) concerns a subject matter that is actually unlawful under Title VII or that the employee reasonably believes to be unlawful. *Id.* (citations and internal quotation marks omitted).

The Fourth Circuit has explained that this "holistic approach is . . . consistent with the broad remedial purpose of Title VII: to root out the cancer [of discrimination] in [the] workplace":

> This is particularly so in the retaliation context, where Title VII must be read to provide broader protection for victims of retaliation than for [even] victims of race-based, ethnic-based, religion-based, or gender-based discrimination, because effective enforcement could . . . only be expected if employees felt free to approach

6

officials with their grievances . . . . Acknowledging and protecting activities that, viewed as a whole, oppose unlawful discrimination will promote the prompt and full reporting on which Title VII enforcement depends.

*Id.* at 418 (citations and internal quotation marks omitted).

### III.   Discussion

#### A.   Plaintiff Engaged in Protected Activity

The Court previously questioned whether there was sufficient evidence for the jury to conclude that Plaintiff engaged in protected activity under Title VII. ECF No. 99. The Court ordered Plaintiff to file any relevant trial transcript excerpts that support that Plaintiff engaged in protected activity. *Id.* Plaintiff complied with the Court's order and filed a short brief reciting the evidence demonstrating that Plaintiff engaged in protected activity, including excerpts from the trial transcript. ECF No. 103. Having reviewed Plaintiff's submission, the Court must conclude that Plaintiff engaged in protected activity by opposing a statement made by his supervisor that was discriminatory on the basis of race and national origin.

During trial, Plaintiff testified that when he was first transferred to the District 5 station in March or April 2019, his first-line supervisor was Sergeant Jackson and his second-line supervisor was Defendant Angela Lane Porter. ECF No. 102 at 60. Plaintiff testified about a conversation he had with Porter after his transfer, while she was one of his supervisors:

Q. When you transferred over to District 5, did you have a conversation about -- did you have a conversation with Defendant Porter about Africa?

A. Yes.

Q. Okay. Can you tell me the circumstances that led to that conversation? Where were you? What happened?

A. We were at the station. Lieutenant Lane [Porter] worked a lot of part-time assignment at the National Harbor, at the MGM. One day, she came in there, she told me that I met this gentleman from Ghana that dressed well; he's a well-dressed guy from Ghana. I say, oh, that's interesting, Lieutenant. And I told them, you never

think about visiting Africa? And her response was, no, I do not like African men, I don't tolerate them because they are aggressive. And I told them, I said, Lieutenant, that's generalizing, that's not every African man. I'm an African man but I don't behave that way. And her response was, you guys are all the same.

Q. How did that make you feel?

A. I was sad, disappointing hearing from somebody that is my supervisor.

Q. Did this occur -- just so we can give a time frame, did this occur -- if you can recall, did it occur right when you were transferred? Shortly after you were transferred? Or much later on after you were there?

A. No, this is -- was early when I was transferred to her.

Q. Okay. Was that the end of the conversation? So did it end with -- did it end with Ms. Porter saying you were all the same, or did the conversation continue?

A. It did continue.

Q. Can -- can you tell me what else transpired in the conversation?

A. Then she said that do you know that nobody wanted you on this district or this stations? I was shocked to hear -- I was shocked to have heard that. I said, what do you mean by that? She said, I requested them to appoint you to District 5.

Q. And did you ask why?

A. I did.

Q. And what was her response?

A. "I want you to be obedient under a female supervisor."

Q. And how did that make you feel?

A. Surprised; I was surprised.

ECF No. 102 at 60-62.

Plaintiff is a man from Africa.[1] When he expressed his disagreement with Porter's discriminatory characterization of African men, referring to her comments as unfairly

---

[1] Porter is an African American woman.

8

"generalizing," he engaged in protected activity under Title VII's Opposition Clause. Although Plaintiff's pushback against Porter's stereotyping was informal and conversational, it objectively communicated a belief to Porter that her comments reflected an impermissible, stereotype-driven, discriminatory view of African men as a group. That is sufficient under *Crawford*: when an employee communicates to his employer a belief that the employer has engaged in employment discrimination, "that communication virtually always constitutes the employee's opposition to the activity." 555 U.S. at 276 (internal quotation marks omitted).

The threshold for oppositional conduct is not onerous, *DeMasters*, 796 F.3d at 417, and the Fourth Circuit has made clear that protected opposition encompasses informal protests and voicing one's opinions to bring attention to discriminatory conduct. *Laughlin*, 149 F.3d at 259-60. Plaintiff was not required to invoke the words "Title VII" or "discrimination" for his objection to qualify as protected activity. What matters is that his conduct, viewed as a whole, communicated opposition to what he reasonably believed was national-origin-based stereotyping by a supervisory employee, a practice that is unlawful under Title VII. *See* 42 U.S.C. § 2000e-2(a)(1)-(2); *Boyer-Liberto*, 786 F.3d at 278 (explaining that an "isolated incident" can "amount to discriminatory changes in the terms and conditions of employment" if that incident is "extremely serious," especially when a supervisor is involved in the hostile work environment).

After Plaintiff expressed his disagreement with Porter's discriminatory characterization of African men, he experienced a number of unwelcome adverse actions by his employer: his request for vacation leave was denied, he was designated as absent without official leave when he was sick, he was subjected to heightened scrutiny when he reported the lack of cell phone service in an elevator, he was required to give a duress statement to a subordinate officer after incurring minor

damage to his police cruiser, he was issued a written reprimand for leaving his weapon at home, and he was denied requests for overtime pay for time he had worked.

The jury could have reasonably concluded that Plaintiff's verbal disagreement with Porter's discriminatory characterization of African men was opposition to an employment practice that Plaintiff believed to be unlawful: a supervisor making demeaning and racist remarks about African men, to a male African subordinate, in a workplace setting. Plaintiff's opposition to Porter's racist remark was objectively reasonable in light of the facts. *See Peters v. Jenney*, 327 F.3d 307, 321 (4th Cir. 2003); *see also Boyer-Liberto*, 786 F.3d at 282 ("[A]n employee is protected from retaliation when [he] opposes a hostile work environment that, although not fully formed, is in progress."). Because Plaintiff expressed his disagreement with Porter verbally in person, his employer was necessarily aware of his oppositional activity.

Plaintiff cites other evidence of purported protected activity in his brief. For the same reasons that the Court expressed in its summary judgment opinion (ECF No. 40), the Court is unconvinced that any of this conduct, by itself, could amount to protected activity. Regarding Plaintiff's complaints to the Fraternal Order of Police ("FOP"), there is limited evidence that Prince George's County was aware of the substance of Plaintiff's complaints before he was subjected to unwelcome actions. *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) ("Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary . . . ."). As for his complaints to LaJoy Preston, there is sparse evidence that Prince George's County should have known the complaints related to perceived unlawful employment actions (rather than just general unfairness in the workplace). *Burgess v. Bowen*, 466 F. App'x 272, 282 (4th Cir. 2012) ("Our cases hold that an employee's complaint

10

constitutes protected activity when the employer understood, or should have understood, that the plaintiff was opposing discriminatory conduct."); *but see Strothers v. City of Laurel, Maryland*, 895 F.3d 317, 330 (4th Cir. 2018) (explaining that when a supervisor injects race into the workplace, that context "obviate[s] the need" for an employee to use explicit language about discrimination and supports an inference that the supervisor understood the racial dimension of any ensuing complaint). And as for Plaintiff's complaint to Sergeant Walden, the evidence is unclear. When asked to explain why he believed he was being treated unfairly, and before Plaintiff could answer, Defendants objected and moved to strike. ECF No. 102 at 54-55. The objection was sustained and Plaintiff did not testify as to what he told Sergeant Walden about the perceived unfair treatment.

The jury could have reasonably concluded that the unwelcome conduct that followed Plaintiff's disagreement with Porter's "African men" comment would not have occurred but for Plaintiff's protected activity, and that the unwelcome conduct was sufficiently severe or pervasive to dissuade a reasonable worker from making or supporting a charge of discrimination. The Court acknowledges the substantial temporal gap between Plaintiff's protected activity and the later unwelcome conduct. The Fourth Circuit has recognized, however, that temporal proximity is not the only means by which a plaintiff may establish the causal link between protected activity and retaliatory conduct. *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) ("In cases where temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus.") (internal quotation marks omitted). Where the record reveals a sustained pattern of antagonism following protected activity, that pattern itself supports a finding of causation even in the absence of tight temporal proximity between any single complaint and any single adverse action. *See Laurent-Workman*, 54

11

F.4th at 218; *DeMasters*, 796 F.3d at 417-18 (instructing courts to view a plaintiff's course of conduct "through a panoramic lens" and to assess the "overall scenario" rather than individual incidents). Here, the trial evidence demonstrated that Plaintiff's working relationship with Porter deteriorated progressively from the time of his opposition to her "African men" comment through his transfer out of her chain of command in January 2021. The jury was entitled to view that progressive breakdown as the product of a persistent retaliatory motive.

Moreover, the record reflects that Plaintiff did not confine his opposition to workplace practices that he believed to be unlawful to the single conversation with Porter in the spring of 2019. He testified that he made contemporaneous written complaints to the FOP and LaJoy Preston as incidents with Porter arose, and at least some information about Plaintiff's complaints to the FOP and LaJoy Preston was relayed to Prince George's County. The FOP complaints and the Preston contact thus could have provided the jury with closer temporal anchors to the later adverse actions (even if the complaints to the FOP and Preston, by themselves, did not amount to protected activity). The jury could have reasonably credited Plaintiff's complaints as a continuation of Plaintiff's initial protected activity, which worked to sustain Prince George's County's retaliatory motive throughout the relevant period. The jury could have reasonably found that Plaintiff's initial opposition to Porter's discriminatory remarks, bridged by his ongoing complaints to the FOP and Preston, resulted in Plaintiff being subjected to escalating unwelcome conduct by the Prince George's County police department.

Construing the evidence in Plaintiff's favor, the Court finds that there is substantial evidence in the record to support the jury's finding that Plaintiff was subjected to a retaliatory hostile work environment by Defendant Prince George's County. Accordingly, the Motion for Judgment (ECF No. 93) is **DENIED**.

**B.       The Jury's Verdict Is Consistent and a New Trial is Unwarranted**

Defendant argues that the jury's finding that Defendant subjected Plaintiff to a retaliatory hostile work environment cannot be reconciled with the jury's finding on the substantive hostile work environment claim and that the weight of the evidence does not support the verdict. ECF No. 93-1 at 11-12. The Court rejects these arguments.

First, the jury's verdict is consistent. To find a defendant liable for retaliatory hostile work environment, a plaintiff need only show that the retaliatory conduct was sufficiently severe or pervasive to dissuade a reasonable worker from making or supporting a charge of discrimination. This is a lower standard than what a plaintiff must show to recover for hostile work environment, where a plaintiff must show that a defendant's unwelcome conduct was sufficiently severe or pervasive "to alter the conditions of the victim's employment and create an abusive working environment." *Seabrook v. Driscoll*, 148 F.4th 264, 271 (4th Cir. 2025). All that a plaintiff must show to prevail on a retaliatory hostile work environment claim is that the unwelcome conduct was sufficiently severe that it might chill the willingness of other employees to speak up about unlawful employment practices. Plaintiff made that showing here.

This is also a lower standard than what a plaintiff is required to show for a standard retaliation claim. For a standard retaliation claim, a plaintiff must prove a materially adverse action that might dissuade a reasonable worker from engaging in protected activity. A retaliatory hostile work environment claim does not require proof of a discrete adverse action. Instead, a plaintiff can prove a retaliatory hostile work environment by pointing to a cumulative pattern of conduct, no single piece of which is significant enough to constitute a materially adverse action, but which in the aggregate might dissuade a reasonable worker from engaging in protected activity.

13

Second, Title VII liability of an employer is independent of individual liability under §§ 1981 and 1983. A plaintiff need not prove that an individual defendant is liable under §§ 1981 or 1983 for an employer to be liable under Title VII. That the jury concluded that the individual defendants were not liable for their individual actions is not inconsistent with its determination that Prince George's County is liable for the collective actions of its agents.

Third, as explained above, the weight of the evidence supports the jury's verdict. In the Court's view, and after observing the testimony during the trial, the evidence in Plaintiff's favor was weak and unpersuasive. If Defendants had specifically addressed Plaintiff's retaliatory hostile work environment claim in their motion for summary judgment, the Court would have granted the motion as to this count because, at the time, the record lacked any evidence of protected activity (which would have entitled Defendants to judgment as a matter of law). The evidence of Plaintiff's protected activity that was introduced at trial was subtle, limited, and somewhat disconnected from the purported retaliatory conduct. Plaintiff's opposition to Porter's remark about African men was certainly not at the forefront of his case. But when reviewing a Rule 50 motion, the Court does not weigh the evidence or judge the credibility of the witnesses. *Trimed, Inc. v. Sherwood Med. Co.*, 977 F.2d 885, 888 (4th Cir. 1992). There was a legally sufficient basis for the jury to find for Plaintiff on the retaliatory hostile work environment claim. The Court does not reach this conclusion without hesitation. But the Court will defer to the jury's findings, *United States v. Ritter*, 167 F.4th 677, 680 (4th Cir. 2026) ("We owe juries—and presiding trial judges—real deference on fact-bound calls and credibility determinations."), and declines to disturb the jury's verdict or to order a new trial. Defendant's Motion (ECF No. 93) is **DENIED**.

14

## IV.    Conclusion

Defendant's Motion for Judgment, Renewed Motion for Judgment or, in the Alternative, Motion for New Trial as to Count IV (ECF No. 93) is **DENIED.**

The Court will enter judgment in favor of Plaintiff Mohamed Magassouba and against Defendant Prince George's County, Maryland, in the amount of $300,000, which is the amount to which the parties have agreed the jury's damages award must be reduced. ECF No. 88 at 1. Unless either party requests otherwise, the Court will defer entering judgment to allow the parties the opportunity to engage in settlement discussions.

The parties are ordered to contact Judge Coulson's chambers to schedule a settlement conference. The parties shall submit a joint status report within 14 days of the conclusion of their discussions with Judge Coulson.

Date: May 19, 2026                                  /s/
                                                 Timothy J. Sullivan
                                                 Chief United States Magistrate Judge

15